UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DARIO PORTILLO and                       CIV. NO. 13-2370 (JNE/JSM)
BLANCA PORTILLO,
        Plaintiffs,                       REPORT AND RECOMMENDATION

v.

HSBC MORTGAGE SERVICES, INC.
MORTGAGE ELECTRONIC
REGISTRATION SYSTEM, INC. and
MERSCORP HOLDINGS, INC.,

        Defendants.

This matter came before the undersigned on defendants' Motion to Dismiss [Docket No. 6]. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. §636(b)(1)(A), (B), Local Rule 72.1, and the Amended Administrative Order issued by Chief Judge Michael Davis on October 16, 2013 [Docket No. 12]. Pursuant to this Court's Order of September 6, 2013, this matter was decided on the parties' written submissions.

Plaintiffs seek to invalidate the foreclosure of the mortgage on their home. Plaintiffs assert three claims against defendants HSBC Mortgage Services ("HSBC"); Mortgage Electronic Registration System, Inc. ("MERS") and MERSCORP HOLDINGS, INC. ("MERSCORP"): (1) quiet title to determine adverse claims under Minn. Stat. § 599.01; (2) declaratory judgment; and (3) slander of title. For the reasons below, the

Court recommends that defendants'[1] Motion to Dismiss be granted and plaintiffs' claims be dismissed with prejudice.

## I.    BACKGROUND

On August 12, 2013, plaintiffs sued defendants in state court. Notice of Removal, Ex. 1 (Complaint) [Docket No. 1-1]. Defendants removed the suit to Federal District Court on August 29, 2013, pursuant to 28 U.S.C. § 1332(a). Notice of Removal [Docket No. 1]. The facts bearing on the motion to dismiss are as follows. Plaintiffs entered into a Note and Mortgage with M & I Bank on January 3, 2005, for property located in Farmington, Minnesota ("Property). Complaint, ¶6. MERS was the nominee for M & I Bank. Id. Plaintiffs entered into two trial loan modifications, but the loan modifications were never made permanent. Id., ¶¶7, 8. Plaintiffs specifically denied that any named defendant or predecessor in interest had the legal right to declare a default on the note. Id., ¶9. Plaintiffs pled that they "did not borrow money from any named Defendant." Id.

On March 6, 2012, Paula Johnson, Assistant Secretary of MERS, executed an Assignment of Mortgage, which assigned the mortgage from MERS to HSBC and the Assignment was recorded in the Dakota County Recorder's office on March 7, 2012. Id., ¶14, Ex. 2 (Assignment of Mortgage). Plaintiffs alleged that when Johnson signed

---

[1]    In the caption of their Complaint, plaintiffs also purports to sue "all other persons unknown claiming any right, title, estate, interest, or lien in the real estate described in the complaint herein." As "[t]here are no factual allegations sufficient to identify these unnamed defendants or state a claim against them," the Court therefore recommends that all claims against them be dismissed. See Sonsalla v. Mortgage Elec. Registration Sys., Inc., Civ. No. 13-659 (JRT/JSM), 2013 WL 4052825, at *1 (D. Minn. Aug. 9, 2013) (citing Estate of Rosenberg ex rel. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995) (affirming dismissal of unidentified defendants about whom no factual allegations were made)).

the Assignment she was an employee of HSBC, and there was no "of record" evidence of Johnson's authority to execute the Assignment of Mortgage, in violation of Minn. Stat. §§580.05 and 507.413.  Id., ¶¶14, 25.  On August 16, 2012, the Reiter & Schiller, P.A. law firm ("Reiter & Schiller") filed a Notice of Pendency against the property, which was recorded in the Dakota County Recorder's office.   Complaint; Ex. 3 (Notice of Pendency).  The Notice of Pendency was signed by attorney Kurt Trisko.  Id., ¶15.

On October 2, 2012, HSBC employee, Maria Vadney, executed a Power of Attorney empowering Reiter & Schiller to foreclose on the Property.  Id., ¶17.  Plaintiffs alleged that Reiter & Schiller prepared this Power of Attorney in Minnesota and Vadney executed the document in Florida.  Id., ¶17.  According to plaintiffs, Vadney had been identified by the Massachusetts Southern Essex District Register of Deeds as a "robo-signer," or someone who has executed documents without legal authority or knowledge of the contents of the documents.  Id., ¶17.  Plaintiffs alleged that the Power of Attorney that Vadney had signed was invalid because of this "robo-signing."  Id., ¶25.  In support of this allegation, plaintiffs submitted the affidavit of John O'Brien, Registrar of Deeds of the Southern Essex District of the Commonwealth of Massachusetts.  Id., Ex. 9.  In this affidavit, O'Brien stated that as of June, 2011, it was his policy as Registrar to require an independent verification by affidavit of any document sent for recording that was signed by an alleged robo-signer "on record at my registry."  Id.  The Southern Essex District employed McDonnell Property Analytics to perform a forensic examination of mortgages recorded in 2010 in its district.  Id., ¶26.  As part of this audit, McDonnell identified robo-signers, including Vadney.  Id.

3

On October 4, 2012, Schiller & Reiter noticed a sheriff's sale of the Property, which was conducted on December 6, 2012. Id., Ex. 5 (Sheriff's Certificate of Sale and Foreclosure Record). HSBC bid $146,149.86 and obtained the Property at the foreclosure sale. Id. The Sheriff's Certificate of Sale was recorded in the Dakota County Recorder's Office on December 12, 2012. Id. Plaintiffs alleged that on the date of the sheriff's sale, HSBC was not the holder of the note and as a result, lacked the authority to enforce the Note or exercise the power of sale in the mortgage. Id., ¶18.

The Complaint alleged that the Office of the Comptroller of Currency and HSBC entered into a Consent Order on April 13, 2011, in which HSBC was found to have engaged in "unsafe and unsound" banking practices in conducting foreclosures. Id., ¶20. In connection with the Consent Order, MERS revoked the authority to initiate foreclosures in MERS's name after July 22, 2011. Id., ¶22.

According to plaintiffs, the foreclosure was void because their loan was securitized and "securitization always requires the delivery of executed assignments of mortgage delivered to a trustee." Id., ¶25.

Plaintiffs pled the following causes of action:

Count I sought a determination of adverse claims under Minn. Stat. §599.01, et. seq. This Count alleged that in a quiet title action, defendants have the burden of proof, and consequently, defendants must prove their interest in the Property by a preponderance of evidence. Id., ¶¶30-39.

Count II sought a declaratory judgment pursuant to Minn. Stat. §555.02 that HSBC's interest in the Property or mortgage is void, the foreclosure is void, and that plaintiffs remained the fee owners of the Property. Id., ¶¶41, 42.

4

Count III alleged slander of title based on the defendants' drafting and recording of documents[2] that plaintiffs claimed were false and not executed by legally authorized persons, which evidenced a reckless disregard for the truth and which created a cloud on plaintiffs' title to the Property. Id., ¶¶43-47.

As relief, plaintiffs sought a determination of the alleged adverse interests in the Property; a declaratory judgment that the mortgage, Sheriff's Certificate of Sale, Assignment of Mortgage, and Notice of Pendency and Power of Attorney were void; and an order that plaintiffs are the fee owners of the Property; and monetary damages. Complaint, Prayer for Relief, ¶¶I, II, III.[3]

Defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def. Mem."), pp. 6-17 [Docket No. 7]. Defendants submitted that the theories on which the Complaint was based—i.e. Johnson's lack of signing authority because there is no "of record" evidence of her authority—were meritless as it is well-settled law that even if individuals signing documents worked for other organizations, it does not mean that these persons cannot also work for or be hired as agents on behalf of other clients. Id., pp. 7-8. Additionally,

---

[2]    The Complaint does not identify these documents, but the Court assumed plaintiffs were referring to the Assignment of Mortgage signed by Johnson, the Notice of Pendency signed Trisko, and the Power of Attorney signed by Vadney.

[3]    At the conclusion of the Prayer for Relief, plaintiff's attorney William Butler brazenly stated: "Because the amount in controversy is less than $75,000, removal of this action will violate Minn. R. Civ. P. 11." Plaintiffs seek to void their mortgage, which had a balance of $313,294.27 at the time of the foreclosure sale. Complaint, Ex. 5. HSBC paid $146,149.86 for the Property at the sheriff's sale. The assessed value of the Property in 2011 was $196,300. Notice of Removal, Ex. 2. In a suit for declaratory or injunctive relief, including quiet title, the amount in controversy is "what the property interest at issue is worth in the marketplace." Usery v. Anadarko Petroleum Corp., 606 F.3d 1017, 1019 (8th Cir. 2010). Butler's statement regarding the amount in controversy is patently false and the Court will not address it further.

the claims regarding Johnson's and Vadney's signing authority were purely speculative and even if true, plaintiffs lacked standing to challenge Johnson's execution of the Assignment or Vadney's execution of the Power of Attorney.  Id., pp. 10-13.  Further, plaintiffs failed to identify a single item in the Power of Attorney that was outside of Vadney's personal knowledge nor were there any inaccuracies in the Power of Attorney or the Assignment.   Therefore, even if Vadney lacked personal knowledge of the contents of the documents, her lack of knowledge was harmless.   Id.  As to plaintiff's allegations regarding MERS's revocation of the authority to initiate foreclosures in MERS's name after July 22, 2011, (Complaint, ¶22), defendants pointed out that the foreclosure was not initiated in MERS's name, it was initiated in HSBC's name.  Id., p. 9.

Regarding plaintiffs' claims that the foreclosure was void because their loan had been securitized, defendants noted that there was a complete lack of factual predicate for that allegation and even if true, dismissal would be appropriate because plaintiffs were not parties to any trust agreement into which the mortgage may have been placed. Id., pp. 13-14.  Additionally, whether the loan was securitized did not affect HSBC's right to foreclose.  Id., p. 15 (citing Blaylock v. Wells Fargo Bank, N.A., Civ. No. 12-693 (ADM/LIB), 2012 WL 2529197, at *5 (D. Minn. June 29, 2012), aff'd, 502 Fed. Appx. 623 (8th Cir. 2013)).  As to plaintiffs' claims that HSBC was not the holder of the note at the time of the foreclosure, defendants noted that this allegation was based on the

meritless, discredited "show me the note" theory propounded in the past by plaintiffs' attorney William Butler.[4]

## II.   LEGAL STANDARDS

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true.  Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).   In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than a unadorned, the-defendant-unlawfully-harmed-me-accusation."  Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).  Thus, to "survive a motion to dismiss, a

---

[4]      Butler was suspended from practice before the United States Court of Appeals for the Eighth Circuit on December 26, 2013.  In re Butler, No. 13–9013 (8th Cir. Dec. 26, 2013).  As a result, Butler was automatically suspended from practice before the District Court, effective December 26, 2013. See D. Minn. L.R. 83.6(b)(1); In re Butler, Misc. No. 13–49(MJD), ECF No. 10 (D. Minn. Jan. 14, 2014).

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 677 (quoting Twombly, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss, without converting the motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 12(d). "The court, however, 'may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings,'" without converting the motion into one for summary judgment. See Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008) (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted)); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697, n. 4 (8th Cir. 2003). The Court has considered all of the materials attached as exhibits to plaintiffs' Complaint in connection with this motion.

III.   **DISCUSSION**[5]

A.   <u>Quiet Title</u>

In Minnesota, "[a]ny person in possession of real property personally . . . may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively." Minn. Stat. §559.01.

In response to defendants' motion to dismiss the quiet title claim, plaintiffs contended that all they had to plead was that they were in possession of the Property and defendants had a claim adverse to theirs. Plaintiffs' Memorandum in Opposition to Motion to Dismiss ("Pl. Opp. Mem."), pp. 6-10 [Docket No. 10]. Based on those allegations, plaintiffs alleged that they had "clearly stated a claim under Minn. Stat. §599.01."[6] <u>Id.</u>, p. 10.

---

[5]      This Court notes that plaintiffs did not object to the foreclosure within the redemption period under Minn. Stat. § 580.23(a), and therefore, arguably no longer have standing to challenge the foreclosure – an additional issue defendants raised in their motion to dismiss. Def. Mem., p. 13. <u>See</u> <u>Sorem v. Bank of New York Mellon</u>, Civ. No. 13-290 (DWF/JSM), 2013 WL 4611115, *3 (D. Minn. Aug. 29, 2013); <u>Cheng Lee v. Federal Nat. Mortg. Ass'n</u>, Civ. No. 13-180 (DWF/SER), 2013 WL 2631904, *3 (D. Minn., June 12, 2013); <u>Stein v. Chase Home Fin.</u>, Civ. No. 09-1995 (MJD/JJG), 2010 WL 4736828, at *6 (D. Minn. Aug. 13, 2010) (holding that a plaintiff could not challenge the validity of a foreclosure because the challenge was raised after the expiration of the redemption period), <u>aff'd</u>, 662 F.3d 976 (8th Cir. 2011)). However, given that the Minnesota Supreme Court recently held that a foreclosure was void for failure to strictly comply with Minn. Stat. § 580.02(3), despite the fact the suit was filed after the redemption period (albeit standing was not addressed in this decision), <u>Ruiz v. 1st Fidelity</u>, 929 N.W.2d 53, 58 (Minn. 2013), the Court proceeds to analyze the merits of plaintiffs' claims.

[6]      The Minnesota Court of Appeals disagrees with plaintiffs' argument that a quiet title claim premised solely on allegations that they were in possession of the Property and defendants had a claim adverse to them states a cause of action under Minnesota law. In a case similar to the instant suit and relying on the standards for pleading articulated in <u>Twombly</u>, the Court of Appeals stated:

Plaintiffs' counsel has made this exact argument in the past and the Eighth Circuit could not have been more emphatic in its response: "[w]e apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law." Karnatcheva v. JP Morgan Chase Bank, NA, 704 F.3d 545, 548 (8th Cir. 2013), cert. denied, 134 S.Ct. 72 (2013); see also Dunbar v. Wells Fargo Bank, N.A., 709 F.3d 1254, 1257 (8th Cir. 2013) (quoting Karnatcheva); Novak v. JP Morgan Chase Bank, 518 F. App'x 498, 501 (8th Cir. 2013) (quoting Karnatcheva); Gharwal v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-685 (PJS/JSM), 2013 WL 4838904, at *2 (D. Minn. Sept. 11, 2013) (noting that the Eighth Circuit has "squarely and repeatedly rejected" this argument).

Thus, this Court has reviewed plaintiffs' quiet title claim applying the standards governing Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

> In their amended complaint, appellants summarily claim that they are in possession of their respective properties and that Deutsche Bank's mortgage liens are invalid. Their only argument in this appeal is that these summary allegations are sufficient to overcome a motion to dismiss. We disagree.
>
> Adopting appellants' position would mean that quiet-title claims will never be dismissed when merely the two facts of possession and invalid mortgage lien are alleged, without regard for how these facts would give rise to an entitlement to relief. This result undermines the court's duty to determine "whether the complaint sets forth a legally sufficient claim for relief." See Hebert [v. City of Fifty Lakes, 744 N.W.2d 226, 229 (Minn.2008)]. Beyond the summary facts alleged, appellants must present more than just labels or conclusions in their complaint to survive a motion to dismiss.

Mutua v. Deutsche Bank Nat. Trust Co., 2013 WL 6839723, at *2 (Minn. Ct. App. Dec. 30, 2013).

Mere allegations of a defendant's possession of the property and conclusory statements that the defendant's adverse claims are invalid are insufficient to state a claim for relief.   See Karnatcheva, 704 F.3d at 548 (affirming the district court's dismissal of the plaintiff's quiet title claim "because the plaintiff's pleadings, on their face, have not provided anything to support their claim that the defendants' adverse claims are invalid, other than labels and conclusions, based on speculation that transfers affecting payees and assignments of the notes were invalid."); Yang Mee Thao-Xiong v. American Mortg. Corp., Civ. No. 13-354 (MJD/TNL), 2013 WL 3788799, at *4 (D. Minn. July 18, 2013) (quoting Novak v. JP Morgan Chase Bank, N.A., Civ. No. 12-589 (DSD/LIB), 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012), aff'd, 518 F. App'x 498 (8th Cir. 2013)) (finding that plaintiffs "'must state facts sufficient to allow the court to draw the reasonable inference that . . . she is in possession and that a defendant claims a right or title to the property, but has no such right or title.'").

Consequently, courts in this District have unequivocally held that conclusory allegations lacking in factual support are insufficient to satisfy the Rule 8 pleading standards or the standards articulated in Iqbal and Twombly.   See Karnatvcheva, 704 F.3d at 548; Blaylock v. Wells Fargo Bank, N.A., 502 Fed. Appx. 623, 2013 WL 1688894, at *1 (8th Cir. April 19, 2013) (based on Karnatcheva, dismissed quiet title claim for falling short of federal pleading requirements); Iverson v. Wells Fargo Bank, N.A., 2013 WL 1688903 (8th Cir. April 19, 2013) (unpublished) (same); Sorem v. Bank of New York Mellon, Civ. No. 13-290 (DWF/JSM), 2013 WL 4611115, at *2-3 (D. Minn. Aug. 29, 2013); Ko v. Mortgage Elec. Registration Sys., Civ. No. 13-596 (JRT/AJB), 2013 WL 4052680, at *2 (D. Minn. Aug. 9, 2013); Quale v. Aurora Loan Servs., LLC,

Civ. No. 13-621 (JNE/AJB), 2013 WL 3166584, at *1 (D. Minn. June 20, 2013) (string citation omitted); Lara v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-676 (SRN/AJB), 2013 WL 3088728, at *3 (D. Minn. June 18, 2013); Schumacher v. Federal Home Loan Mortg. Corp., Civil No. 13-29 (DSD/FLN), 2013 WL 3033746, *2 (D. Minn. June 17, 2013).  That is the case here.

Specifically, plaintiffs' speculative claims regarding Johnson's lack of authority to sign the Assignment and Vadney's lack of authority to sign the Power of Attorney, (Complaint, ¶¶15, 28), "do not hold up to even the slightest scrutiny."  Simmer v. HSBC Bank, Civ. No. 13-1549 (DSD/AJB), 2013 WL 6244710, at *3 (D. Minn. Dec. 3, 2013) (plaintiffs' allegations regarding individuals' alleged lack of authority to sign Notices of Pendency and Powers of Attorney failed because the allegations are "merely conclusory assertions without any factual allegations to support them."); Segura v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-531(SRN/JJK), 2013 WL 3034096, at *2 (D. Minn. June 17, 2013) (rejecting "contention that nearly every individual who signed a document in support of the foreclosure did not have the authority to do so" as "implausible and speculative, just the sort of 'vague claims' that have been rejected repeatedly by courts in this District and by the Eighth Circuit Court of Appeals.") (citing Mine v. Federal Home Loan Mortg. Corp., Civ. No. 13–220, 2013 WL 2443852, at *4 (D. Minn. June 5, 2013) (Montgomery, J.); Welk v. Federal Nat'l Mortg. Ass'n, Civ. No. 12-2864 (SRN/TNL), 2013 WL 2155463, at *4 (D. Minn. May 17, 2013) ("[Plaintiff] insists that the individual who signed the assignment to Wells Fargo and the individual who signed the power of attorney allowing Wells Fargo to institute foreclosure proceedings did not have the authority to do so, and that the law firm and Trisko knew that the individuals had no

authority but proceeded with the foreclosure anyway.   But there are no facts of any kind—no evidence pled supporting these allegations."); Stilp v. HSBC Bank USA, N.A., Civ. No. 12-3098 (ADM/JJK), 2013 WL 1175025, at *4 (D. Minn. Mar. 20, 2013), aff'd, 2013 WL 5340399, at *3 (8th Cir. Sept. 25, 2013) ("Plaintiffs plead upon information and belief that all individuals executing assignments of mortgage and power of attorney lack legal authority to do so. Plaintiffs believe the individuals executing assignments and POAs are employed by organizations other than the ones on whose behalf they have signed. . . . Even if the individuals do work for other organizations, it does not mean that they could not also work for or be hired as agents on behalf of different clients. Absent even an iota of evidence of fraud, these are conclusory allegations which do not state a claim for which relief may be granted.") (citations omitted); Jackson v. Mortgage Elec. Registration Sys., Inc., 770 N.W.2d 487, 491 (Minn. 2009) (recognizing that mortgage assignments are executed for MERS by bank representatives).

Additionally, even if there was any truth to plaintiffs' unsupported statements about Johnson's and Vadney's lack of authority to execute the Assignment of Mortgage or the foreclosure-related documents, plaintiffs suffered no injury in fact as a result and therefore, lack standing to pursue a quiet title claim on this basis. See Pope v. Federal Home Loan Mortg. Corp., Civ. No. 12-3094 (SRN/JJG),  2013 WL 2251001, at *3 (D. Minn. May 22, 2013) ("Mr. Butler has insisted for more than two years that the individual named in this and many other complaints, a Ms. China Brown, lacked legal authority to sign on behalf of Wells Fargo.  He has yet to produce any evidence in support of this speculative assertion.  But even if Ms. Brown did not have the authority to bind Wells Fargo, then whatever harm caused by that lack of authority is harm to Wells Fargo, not

to the Popes or any other borrower. . .[t]hus, even assuming that Ms. Brown was not authorized to sign the documents she signed, the Popes have suffered no harm as a result and do not have standing to challenge her alleged lack of authority.") (internal citation omitted); Kaylor v. Bank of Am., N.A., Civ. No. 12-1586 (DSD/SER), 2012 WL 6217443, at *5 (D. Minn. Dec. 13, 2012) (finding that even if individual who effectuated the assignment of the mortgage did not have authority to do so, homeowners not a party to the mortgage assignment had no standing to challenge the assignment.); Forseth v. Bank of Am., N.A., Civ. No. 13-38 (SRN/TNL), 2013 WL 2297036, at *5 (D. Minn. May 24, 2013) ("The allegations regarding unauthorized signatures on every document related to the foreclosure process for the Forseths' mortgage are similarly implausible and pure speculation.  But even if the signatures were unauthorized, the harm caused by the lack of signing authority is harm to MERS or BAC, in the case of Mr. Bruns, or BAC/Bank of America or Fannie Mae in the case of Mr. McDaniel and Ms. Girvan. There is no allegation in the Amended Complaint that any of these individuals falsely initiated foreclosure proceedings against the Forseths' property, and the documents in the public records belie such a claim in any event.   The Forseths defaulted on their mortgage by not making payments as they promised. Even if all three of these individuals lacked signing authority, as the Forseths claim, they have suffered no injury as a result and therefore have no standing to pursue their claims.") (citations omitted); Sovis v. Bank of New York Mellon, Civ. No. 11-2253 (DWF/LIB), 2012 WL 733758, at *4-5 (D. Minn. Mar. 6, 2012) (finding that general allegations that defendants unlawfully foreclosed on plaintiff's home pursuant to a series of invalid assignments of mortgage, "cannot furnish the causal nexus necessary to establish standing to assert

her claims."); <u>Gerlich v. Countrywide Home Loans, Inc.</u>, Civ. No. 10-4520 (DWF/LIB), 2011 WL 3920235, at *2 (D. Minn. Sept. 7, 2011) (borrower lacks standing to challenge assignment of mortgage); <u>Kebasso v. BAC Home Loans Servicing, LP</u>, 813 F. Supp.2d 1104, 1113 (D. Minn. 2011) (finding that mortgagors, lacked standing to challenge the defendants' authority to foreclose, as "'any disputes that arise between the mortgagee holding legal title and the assignee of the promissory note holding equitable title do not affect the status of the mortgagor for purposes of foreclosure by advertisement.' The court reaffirmed the principle that 'legal and equitable title can be separated' and if a dispute arises between the holder of legal and equitable title with respect to foreclosure, '[i]t is a matter between them alone, and does not concern the mortgagor,' and such a transaction does "not affect the interests of the mortgagor, and he could not object.'") (quoting <u>Jackson</u>, 770 N.W.2d at 500).

Further, plaintiffs' contention that the Assignment of Mortgage from MERS to HSBC was invalid because there is no "of record" evidence of Johnson's authority to sign to sign the Assignment, (Complaint, ¶¶14, 24), is meritless on the facts and law. Even if there was no "of record" evidence of Johnson's authority to sign the Assignment of Mortgage, there is no legal requirement that the source or origin of this "authority" must be recorded in order to render the foreclosure of the Mortgage valid.

To foreclose a mortgage by advertisement, the foreclosing party must meet the mandatory requirements prescribed by the foreclosure by advertisement statutes. <u>Jackson</u>, 770 N.W.2d at 495.  In this regard,

> [s]ection 580.02 contains three requirements that must be met before a mortgagee can foreclose by advertisement:

(1) that some default in a condition of such mortgage has occurred, by which the power to sell has become operative;

(2) that no action or proceeding has been instituted at law to recover the debt then remaining secured by such mortgage ...

(3) that the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded....

Id. at 496.   "Section 580.02 is strictly construed, and a foreclosing party must demonstrate "exact compliance" with the statute's requirements." Beecroft v. Deutsche Bank Nat. Trust Co., 798 N.W.2d 78, 83 (Minn. Ct. App. 2011), review denied (July 19, 2011) (quoting Jackson, 770 N.W.2d at 494). "Absent strict compliance with section 580.02, the foreclosure proceeding is void." Id. (citing Jackson, 770 N.W.2d at 494).

"The purpose of the statutory recording requirements is to ensure that a mortgagor has notice and an opportunity to redeem." Beecroft, 798 N.W.2d at 83 (citing Jackson, 770 N.W.2d at 495).  Therefore, "the plain language of section 580.02 requires only that the mortgage and any assignment of the mortgage be recorded to entitle a mortgage assignee to foreclose by advertisement," and nothing more.  Id.

There is nothing in Minn. Stat. § 580.02 or in any other statute[7] that requires that the origin of the power to execute an assignment of mortgage or the power to execute

---

[7]     Plaintiffs alleged that the lack of "of record" evidence of Johnson's signing authority violated Minn. Stat. §580.05.  Minn. Stat. § 580.05 governs the recording of mortgage assignments by an attorney at law.  It provides:

When an attorney at law is employed to conduct such foreclosure, the authority of the attorney at law shall appear by power of attorney executed and acknowledged by the mortgagee or assignee of the mortgage in the same manner as a conveyance, and recorded prior to the sale in the county where the foreclosure proceedings are had.  If such

foreclosure-related documents by an attorney-in-fact to be recorded.  See Beecroft, 798

N.W.2d at 83 ("Indeed, Minnesota courts have recognized that the power to execute an

assignment by an attorney in fact need not be recorded to satisfy the foreclosure-by-

advertisement statute."); at 84 ("Applying the plain language of section 580.02, we

conclude that there is no requirement to record the instruments authorizing Citi

Residential to act as Ameriquest's attorney in fact for mortgage assignments and

memorializing the election of the special officers to execute the mortgage assignment

for Citi Residential on behalf of Ameriquest.   Only the Beecroft mortgage and

Ameriquest's assignment of the Beecroft mortgage to Deutsche Bank by Ameriquest's

attorney in fact are required to be recorded."); Molde v. CitiMortgage, Inc., 781 N.W.2d

36, 43 (Minn. Ct. App. 2010) (holding that "a document evidencing the authority of an

attorney-in-fact to initiate a foreclosure by advertisement" need not be recorded in the

tract index against the property);[8] see also, Yang Mee Thao-Xiong, 2013 WL 3788799,

---

> attorney be employed on behalf of such mortgagee or
> assignee by an attorney in fact, the attorney's authority shall
> likewise be evidenced by recorded power.

Minn. Stat. § 580.05 (emphasis added).  This statute provides only that the authority of
an attorney to conduct a foreclosure be recorded.

[8]      In Molde, the Minnesota Court of Appeals described the facts as follows:

> Molde later fell behind in his mortgage payments. In
> November 2007, MERS assigned the mortgage to
> CitiMortgage. The assignment was recorded in Dakota
> County on November 13, 2007. That same day, a document
> entitled Notice of Pendency of Proceeding and Power of
> Attorney to Foreclose Mortgage also was recorded in Dakota
> County. The Notice of Pendency of Proceeding and Power
> of Attorney to Foreclose Mortgage described CitiMortgage's
> intent to foreclose Molde's mortgage by advertisement. The
> Notice of Pendency of Proceeding and Power of Attorney to

at *3 ("Moreover, there is no evidence that the assignment of the mortgage lacked proper authority under Minn. Stat. § 507.413. Plaintiff argues that § 507.413 requires that a power of attorney be recorded prior to commencing a non-judicial foreclosure. By its plain language, however, § 507.413 contains no such requirement. Furthermore, § 507.413 has never been interpreted to require such."). [9]

---

Foreclose Mortgage was executed by James A. Geske, Esq., on November 9, 2007. Above the signature line is the notation, "Wilford & Geske, P.A. as Attorney in Fact for CitiMortgage, Inc."

Wilford & Geske's authority to foreclose Molde's mortgage on behalf of CitiMortgage derives not from the document that was recorded in November 2007 but from another document, which was executed and recorded in February 2004. On January 8, 2004, Pamela Schmidt, a vice-president of CitiMortgage, executed a document entitled Limited Power of Attorney. In the Limited Power of Attorney, CitiMortgage appointed the Wilford & Geske law firm to be "its true and lawful Attorney" for purposes of executing foreclosure documents on behalf of CitiMortgage. The Limited Power of Attorney was recorded in Dakota County on February 17, 2004.

781 N.W.2d at 38. Relying on Minn. Stat. § 580.05, Molde contended that "CitiMortgage did not comply with the statutory requirements of a foreclosure by advertisement because the 2004 Limited Power of Attorney was not recorded against his property but, rather, as a miscellaneous document in the Dakota County Recorder's Office. He asserts that, because the document was not recorded in the tract index, a reasonable search would not have led to its discovery and, thus, there was no way to know that Wilford & Geske was authorized to commence foreclosure proceedings on behalf of CitiMortgage." Id. at 39 (internal quotation marks omitted). After a lengthy analysis of the history behind Minn. Stat. § 580.05, the appellate court concluded that the "legislature did not intend to require that a document evidencing the authority of an attorney-in-fact to initiate a foreclosure by advertisement be recorded in the tract index." Id. at 39-43.

[9]     According to the Minnesota Supreme Court, Minn. Stat. § 507.413, called "the MERS statute," is a recording statute that creates no obligations and does not change the requirements of the foreclosure by advertisement statute; "rather, it uses recording

Nor would any purpose be served by requiring the source of a signing person's or entity's authority be recorded before a foreclosure could be upheld.  As stated previously, the whole point of requiring assignments of mortgage, notices of pendency and powers of attorney to be recorded prior to commencing the foreclosure process (in the case of an assignment) or before the foreclosure sale takes place (in the case of notices of pendency and powers of attorney)[10] is to "ensure that a mortgagor has notice and an opportunity to redeem."   Beecroft, 798 N.W.2d at 83 (citing Jackson, 770 N.W.2d at 495).  Knowing the origin of a signing person's or entity's power to execute an assignment of mortgage or foreclosure related documents will not achieve that purpose.

In sum, it is clear that the "strict compliance" standard applied by the Minnesota courts to the statutes governing foreclosures by advertisement extends only to the recording of mortgages, assignments of mortgages, and the power to conduct foreclosure-related proceedings at certain points of time and no more.  Accordingly, plaintiffs' claim that the foreclosure of their Property was invalid because there was no the recording of the origin of Johnson's authority to sign the Assignment is rejected.

The Court also rejects as meritless plaintiffs' claims that Vadney "robo-signed" the Power of Attorney and signed the Power of Attorney "in violation of MERS guidelines and HSBC's consent order."  Complaint, ¶25.  There is no factual support for the allegation that Vadney "robo-signed" the Power of Attorney at issue in this case.

---

to resolve disputes between parties who have no contractual relationship, but who lay claim to the same title." Jackson, 770 N.W.2d at 494 (citation omitted).

[10]    Under Minnesota law, the notice of pendency must be filed before the first publication of the foreclosure notice and the power of attorney must be "recorded prior to the sale. . . ."  Minn. Stat. § 580.032, subd. 3; Minn. Stat. § 580.05.

The fact that her name appears on a list in Southern Essex District Register of Deeds is irrelevant to any issue in this case.   Similarly, the statement that Vadney signed the document without knowledge of its contents is utterly without factual support.   As defendants pointed out, the change to the MERS membership rules affected foreclosures in the name of MERS.   Complaint, Ex. 7.   The foreclosure on the Property was in HSBC's name.

Plaintiffs' claims regarding the alleged securitization of the mortgage are also meritless.   To begin with, the entire claim consisted of a single sentence: "The foreclosure is also void because this loan was securitized and securitization always requires delivery of executed assignments of mortgage delivered to a trustee." Complaint, ¶25.   Plaintiffs provided no information regarding this alleged securitization, when the loan was allegedly placed into a trust, who the trustee is and no information regarding the terms of the trust.   This is the sort of "naked assertion" was rejected by Iqbal.   556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.").   But even assuming the mortgage was securitized and the Assignment was not delivered to the trustee, as plaintiffs claim it must be, plaintiffs lack standing to challenge their foreclosure on that basis because they are not a party to or third party beneficiary of the trust agreement.   Karnatcheva, 704 F.3d at 547.

Finally, plaintiffs' contention that HSBC did not hold the note at the time of the foreclosure is irrelevant, unless of course, this Court were to accept (which it will not) the discredited "show me the note" theory plaintiffs' counsel has posited many times

over.  See, e.g., Butler v. Bank of America, N.A., 690 F.3d 959, 962 (8th Cir. 2012) (the

"show me the note" argument "is foreclosed by the plain language of Minnesota's

foreclosure statute); Ebbighausen v. JP Morgan Chase Bank, N.A., Civ. No. 10-

3120(JRT/LIB), 2013 WL 53836, at *7 (D. Minn. Jan. 3, 2013) ("the law of this Circuit

clearly establishes that different entities can hold the promissory note and legal title to

the mortgage, and that the holder of legal title to the mortgage need not possess the

promissory note before it can institute foreclosure by advertisement.") (citing Stein v.

Chase Home Fin. LLC, 662 F.3d 976, 979-980 (8th Cir. 2011) citing Jackson, 770

N.W.2d at 489-501)).

For all of these reasons, the Court concludes that plaintiffs' theories regarding

their quiet title claim have no basis in law or fact and Count I must be dismissed.[11]

---

[11]    In their memorandum in opposition to defendants' motion to dismiss, plaintiffs
referred to the "late-filed" Power of Attorney, which "renders the foreclosure void for
failure to strictly comply with the foreclosure statutes."  This allegation was not pled in
the Complaint.  In any event, it has no merit.  The Power of Attorney was recorded on
November 13, 2012.  Complaint, Ex. 4.  The foreclosure sale took place on December
6, 2012.  Id., Ex. 5.  The foreclosure statute only requires that the Power of Attorney be
recorded "prior to sale."  See Minn. Stat. §580.05, providing:

> When an attorney at law is employed to conduct such
> foreclosure, the authority of the attorney at law shall appear
> by power of attorney executed and acknowledged by the
> mortgagee or assignee of the mortgage in the same manner
> as a conveyance, and recorded prior to the sale in the
> county where the foreclosure proceedings are had.  If such
> attorney be employed on behalf of such mortgagee or
> assignee by an attorney in fact, the attorney's authority shall
> likewise be evidenced by recorded power.

B.     Slander of Title

To state a claim for slander of title, a plaintiff must allege facts that show: (1) there was a false statement concerning the real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; and (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.  Paidar v. Hughes, 615 N.W.2d 276, 279–80 (Minn. 2000) (citation omitted).  To plead malice, plaintiff "must raise factual allegations sufficient to create a plausible claim that at least one of the [  ] parties acted with a reckless disregard for the truth, 'despite a high degree of awareness of probable falsity.'"  Dunbar, 709 F.3d at 1258 (quoting Brickner v. One Land Dev. Co., 742 N.W.2d 706, 711 (Minn. Ct. App. 2007)); see also Quevli Farms, Inc. v. Union Sav. Bank & Trust Co., 178 Minn. 27, 226 N.W. 191, 192 (Minn. 1929) (concluding that to be a malicious statement, it must be a "groundless disparagement of the plaintiff's title or property . . . made without probable cause.").  The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title.  Kelly v. First State Bank of Rothsay, 177 N.W. 347, 347 (Minn. 1920).  Additionally, plaintiffs must establish that they relied on the alleged false statement.  See Welk, 850 F.Supp.2d at 993-94.

The Court finds the slander of title claim must be dismissed because plaintiffs have alleged no facts from which this Court could infer that the named defendants made a false statement, acted maliciously or that plaintiffs suffered any pecuniary loss from a publication concerning title to their property.  See Ko, 2013 WL 4052680, at *4 (dismissing similarly-pled slander of title claim).  Significantly, plaintiffs' only response to

defendants' argument in favor of dismissal of this count was to repeat the allegations in the Complaint regarding the filing of documents containing "false" statements.  Pl. Opp. Mem., p. 13.  There is no colorable evidence that the assignment from MERS to HSBC was improper.  Therefore, plaintiffs failed to state a claim for slander of title, and dismissal is required.[12]

### C.   Declaratory Judgment

A declaratory judgment is a remedy, not a cause of action.  See, e.g., Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617–618 (Minn. 2007) (a declaratory judgment action may be maintained only where there is a justiciable controversy); Buck v. American Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201 "creates a remedy, not a cause of action").  In light of the Court's conclusion that plaintiffs' substantive claims must be dismissed under Rule 12(b)(6), "[they are] left with a remedy in search of right."  Scanlon v. Northwest Mortg., Inc., Civ. No. 11-3128 (MJD/TNL), 2012 WL 2885131, at *7 (D. Minn. July 13, 2012).  See also Lara, 2013 WL 3088728 at, *3 (finding that where plaintiff had failed to state a substantive claim, the Amended Complaint also failed to state a claim for declaratory judgment) (citing Weavewood, Inc. v. S & P Home Invs., LLC, 821 N.W.2d 576, [579]

---

[12]   The Court notes that a slander of title claim is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b).  See Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027, 1032 (8th Cir. 2012) (Rule 9(b) applies to slander of title claims); Johnson v. Bank of New York Mellon, Civ. No. 13-2207(DSD/JSM), 2014 WL 129640, at *5 (D. Minn. Jan. 14, 2014); Ko, 2013 WL 3088728, at *4; Pope, 2013 WL 2251001, at *4; Haubrich v. U.S. Bank Nat'l Ass'n, Civ. No. 12-565(DSD/TNL), 2012 WL 3612023, at *6 (D. Minn. Aug. 21, 2012), aff'd, 720 F.3d 979 (8th Cir. 2013).  Defendants did not argue in favor of dismissal based on plaintiffs' failure to meet this standard.  Suffice it to say, however, having failed to plead any facts to support a slander of title claim, the claim also fails to meet the Rule 9(b) standard.

(Minn. 2012) ("A declaratory judgment is a procedural device through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists.")). Plaintiffs' claim for declaratory judgment must be dismissed because there is no legal basis for affording the remedy.

For all of these reasons, this Court recommends that plaintiffs' suit be dismissed with prejudice.[13]

---

[13]    "Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend."  Michaelis v. Neb. State Bar Ass'n., 717 F.2d 437, 438-39 (8th Cir. 1983).   Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.   Such is the case here.   See McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.   Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797, at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791, at *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).

**IV.    RECOMMENDATION**

For the reasons set forth above, it is recommended that:

1.      Defendants' Motion to Dismiss [Docket No. 6] be **GRANTED.**

2.      This matter be dismissed with prejudice.

Dated:  March 24, 2014

*Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

**NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 11, 2014**,[14] a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

[14]     The Court has allowed extra time for the defendants to file their objections to this Report and Recommendation, as they are currently unrepresented by counsel.